IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JOE J. KATIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:08-CV-348 |
| | § | |
| AIR FRANCE-KLM, S.A., d/b/a, | § | |
| KLM ROYAL DUTCH AIRLINES, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT KLM ROYAL DUTCH AIRLINES' MOTION FOR PARTIAL SUMMARY JUDGMENT

The following are pending before the court:

1. Defendant KLM Royal Dutch Airlines' motion for partial summary judgment and brief in support (docket entry #20);

2. Plaintiff's brief in response to Defendant's motion for partial summary judgment (docket entry #24); and

3. Reply memorandum of law in support of Defendant KLM Royal Dutch Airlines' motion for partial summary judgment (docket entry #27).

Having considered the Defendant's motion and the responsive briefing thereto, the court finds that the Defendant's motion for partial summary judgment should be denied.

## BACKGROUND

The undisputed facts are as follows:

1. On April 22, 2008, the Plaintiff traveled from Dallas, Texas to Cape Town, South Africa to vacation with two companions;

2. For the first leg of his trip to Cape Town, the Plaintiff traveled onboard KLM Royal Dutch Airlines flight 670 from Dallas, Texas to Amsterdam, The Netherlands;

-1-

3. While onboard flight 670, the Plaintiff broke the crown on tooth "03" (the third tooth from the back on the top right side) while eating a lobster salad. The salad was served by a KLM flight attendant as part of the in-flight meal service;

4. The Plaintiff did not complain of pain at the time of the incident;

5. The Plaintiff did not seek any dental treatment during his stay in Cape Town;

6. The Plaintiff returned to Dallas, Texas on his regularly scheduled flight on May 7, 2008;

7. After returning to Dallas, the Plaintiff had his crown replaced uneventfully by his dentist;

8. The Plaintiff has subsequently suffered no additional problems with the tooth at issue;

9. The Plaintiff brought the instant action for $1,280, the cost of replacing his crown, plus his resulting pain, suffering and mental anguish; and

10. The Plaintiff has made no other claim for economic damages.

The Defendant now moves for summary judgment on any mental anguish damages sought by the Plaintiff for inconvenience, annoyance and inability to enjoy his vacation. The Defendant argues that such damages are not recoverable under the Montreal Convention of 1999.

## **LEGAL STANDARD**

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party

opposing the motion for summary judgment. *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981)(citations omitted). The substantive law identifies which facts are material. *See id.* at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 323, 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). The nonmovant must adduce affirmative evidence. *See Anderson*, 477 U.S. at 257.

## DISCUSSION AND ANALYSIS

"The Montreal Convention, *see* Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, ICAO Doc. 9740, *reprinted in* S. TREATY DOC. NO. 106-45, 1999 WL 33292734 (2000) [*hereinafter* Montreal Convention], was entered into force on November 4, 2003." *Bassam v. American Airlines*, 287 Fed. Appx. 309, 312 (5th Cir. 2008). "It succeeded the Warsaw Convention, *see* Convention for the Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934) [*hereinafter* Warsaw Convention], as the treaty exclusively governing the rights and liabilities of passengers and

carriers in international air transportation." *Id*. "'The Montreal Convention . . . was the product of a United Nations effort to reform the Warsaw Convention "so as to harmonize the hodgepodge of supplementary amendments and intercarrier agreements of which the Warsaw Convention system of liability consists."'" *Id*. (citations omitted). "'The Montreal Convention is not an amendment to the Warsaw Convention[,]' it takes 'precedence over the Warsaw Convention and any of its amendments and related instruments.'" *Id*. (citation omitted). "'The new treaty unifies and replaces the system of liability that derives from the Warsaw Convention, explicitly recognizing the importance of ensuring protection of the interests of consumers in international carriage by air and the need for equitable compensation based on the principle of restitution.'" *Id*. (citation omitted). "Although the Montreal Convention completely replaced the prior Warsaw Convention, courts interpreting the Montreal Convention rely on cases interpreting similar provisions of the Warsaw Convention." *Onwuteaka v. Northwest Airlines, Inc.*, 2007 WL 1406419, *1 n.2 (S.D. Tex. 2007).

"Article 17(1) [of the Montreal Convention] provides that carriers are liable for damage sustained in case of death or bodily injury of a passenger caused by an accident either 'on board the aircraft or in the course of any of the operations of embarking or disembarking.'" *Bassam*, 287 Fed. Appx. at 317. The explanatory note related to Article 17(1) provides as follows:

> Following extensive debate, the Conference decided not to include an express reference to recovery for mental injury, with the intention that the definition of "bodily injury" would continue to evolve from judicial precedent developed under Article 17 of the Warsaw Convention, which uses that term. The Conference adopted the following Statement, recorded in the Minutes of the Proceedings:
>
>> With reference to Article 16 [sic], paragraph 1 of the Convention, the expression "bodily injury" is included on the basis of the fact that in some States damages for mental injuries are recoverable under certain circumstances, that jurisprudence in this area is developing and that it is not intended to interfere with this development, having regard to

jurisprudence in areas other than international carriage by air . . .

*Id.*, quoting **MONTREAL CONVENTION**, 1999 WL 33292734 at *16. "As directed by the Montreal Convention, in looking to existing judicial precedent, courts have held that emotional injuries are not recoverable under Article 17 of the Montreal Convention or Warsaw Convention unless they were caused by physical injuries." *Id.* (certain citations omitted); *see Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991) (holding that an air carrier could not be held liable under Article 17 of the Warsaw Convention when an accident did not cause a passenger to suffer death, physical injury or a physical manifestation of an injury; expressed no view as to whether passengers could recover for mental injuries that accompany physical injuries); *Ehrlich v. American Airlines, Inc.*, 360 F.3d 366 (2d Cir. 2004) (holding that an air carrier may be held liable under Article 17 for mental injuries only if such injuries are caused by bodily injuries).

In the instant case, the Defendant argues that the Plaintiff's claims for pain, suffering and mental anguish do not flow from his bodily injury.[1] More specifically, the Defendant contends that the Plaintiff's allegations of inconvenience, annoyance and loss of enjoyment of his vacation are not recoverable damages under the Montreal Convention.

During his deposition, the Plaintiff testified as follows:

Q: Okay. Did you have any problems with other food in Cape Town?

A: Yes.

Q: Okay. What problems did you have?

A: I just – I had a problem chewing on food because that's the side that I typically chew on. Obviously, if it broke, that's why it broke, is because I chew on that side. So I

---

[1] For summary judgment purposes, the Defendant does not contest that the Plaintiff's broken crown constitutes a "bodily injury" under the Montreal Convention.

> was very cautious.
>
> Hot and cold were a little sensitive on me, and, you know, I had – I just had a discomfort because all the time my – my tongue was reaching over for a broken spot, just – it was just like an automatic – it was a rough spot in your mouth like any other rough spot you would have when you're – when you go to a dentist.

(Katin Dep. 29:12-25)

———————————

> A.  Well, it was just – it was just very discomfortable [sic], you know, walking around and even doing much, you know. I mean, you couldn't take pictures because you're afraid the tooth was going to show, you know. So it was just, I guess, paranoia.
>
> Anything can happen when you're – when you have a tooth problem. If you chip a tooth, you don't want to smile because you're afraid something's going to show up in your mouth.

(Katin Dep. 30:6-14).

———————————

> Q:  Is it safe to say that you were inconvenienced by this?
>
> A:  Very much so.
>
> Q:  Is it safe to say that this was an annoyance?
>
> A:  It was.

(Katin Dep. 42:14-18).

———————————

> A:  You know, I don't think – I don't know if he's said everything to you, but I was so uncomfortable going out and doing stuff –
>
> Q:  Right, right, right.
>
> A:  – like on this trip. And the two folks that were with me, I felt like I inconvenienced them on this trip because of my –

> Q: Uh-huh.
>
> A: – my – you know, my problem. I couldn't eat cold, hot, and, you know, it was just – everything was kind of bothering me. The following month I took the two of them to Nice, France, and – because I just felt like they didn't get what they should have gotten –
>
> Q: Right.
>
> A: – as far as a – as far as a vacation.

(Katin Dep. 43:19 – 44:8).

Additionally, the Plaintiff averred that until his tooth was repaired, he was constantly worried about the condition of his tooth. Katin Aff., p. 2, ¶ 4. The Plaintiff further averred that due to the tooth's increased sensitivity, he was concerned about the types of foods and liquids he could consume. *Id*. Finally, the Plaintiff averred that he was anxious about the prospect of visiting a medical facility in a foreign country. *Id*.

Having reviewed the summary judgment evidence, the court finds that there is a fact issue on whether the Plaintiff's pain, suffering and mental anguish were caused by his physical injury. A reasonable jury could find that any anxiety suffered by the Plaintiff was directly related to his cracked crown. *Compare Longo v. Air France*, 1996 WL 866124, *2 (S.D.N.Y. 1996) (holding that to the extent the plaintiffs' emotional injuries [apprehension of death] flowed from the airplane accident itself rather than from bodily injuries [bruises], such claims for mental distress should be dismissed), *with In re Inflight Explosion on Trans World Airlines, Inc. Aircraft Approaching Athens, Greece on April 2, 1986*, 778 F.Supp. 625, 638 (E.D.N.Y. 1991), *rev'd on other grounds*, *Ospina v. Trans World Airlines, Inc.*, 975 F.2d 35 (2d Cir. 1992) (allowing recovery for pain and suffering experienced by the decedent after a bomb exploded under his seat and tore through his body,

explaining that the decedent's pain and suffering was a direct result of his physical injury), *and Burnett v. Trans World Airlines, Inc.*, 368 F.Supp. 1152 (D.N.M. 1973) (permitting recovery for emotional anxiety that resulted from bodily injury suffered as a result of the hijacking). Since a fact issue exists as to whether the Plaintiff's mental anguish damages flowed directly from his bodily injury, such damages may be compensable under the Montreal Convention.

## CONCLUSION

Based on the foregoing, Defendant KLM Royal Dutch Airlines' motion for partial summary judgment (docket entry #20) is hereby **DENIED**.

IT IS SO ORDERED.

**SIGNED this the 1st day of July, 2009.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE